HOWARD E. HULTIN V. STATE

No. 33,515.  October 2, 1961
Motion for Rehearing Overruled November 22, 1961

MORRISON, Judge concurred.

*William H. Scott, Jr.,* and *Ellis F. Morris,* Houston, for appellant.

*Frank Briscoe,* District Attorney, *Carl E. F. Dally, Lee P. Ward, Jr.,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

Murder with malice is the offense, with punishment assessed at confinement in the penitentiary for life.

Since there is little controversy regarding the facts of this case, we shall state them briefly:

On the evening of April 21, 1960, Michael Wayne Lethcoe, Jimmy South, and Jean and Janet Travis observed appellant, then sixteen years of age, walking down Idaho Street, in Houston, about six feet behind Linda Faye Ruble. After appellant had followed her for some distance, it appeared that he was hitting her, and the boys started running toward appellant and Linda. As they approached, the girl ran past them and fell in the street, and appellant disappeared behind some bushes in a residential driveway. The boys followed and found him, at which time appellant said to them, "Come on, kids," and then drew a knife and started toward the boys. The boys then separated and began running. Appellant threw the knife —a large hunting knife— at Michael Lethcoe, striking him in the back and cutting through the flesh close to his shoulder blade and then glancing off and cutting his arm. After this, appellant disappeared. The boys approached the little girl, Linda, who was lying in the street and bleeding badly. Accompanied by her father and the two boys, Linda was taken to a hospital. She was pronounced dead on arrival.

After his arrest, appellant made both a written and an oral confession, which led to the discovery of the knife he said he threw in the bushes.

In his written confession, appellant related the following: He had heard the boys at school tell of their relations with girls and had wondered " 'what it would be like'." He had the feeling that if he asked a girl to go out with him she would refuse and he did not want to be "turned down." On the day in question he got home about 5:15 p.m., but decided to go out and have "relations with some girl," intending to force the girl into such relations since he "did not want to be turned down." He took his hunting knife, about twelve or fourteen inches long, put it in his belt and walked toward Idaho Street. When he reached that street he observed Linda Faye walking toward a grocery store on Chocolate Bayou Road, at which time he concealed himself in some bushes and waited for her to come back from the store. When he saw her coming he walked up to her, telling her he had a knife and that she should take a right turn on New York Street. The girl only looked at him and began walking away, at which time appellant started stabbing her with his knife. The girl screamed, dropped the groceries she was carrying, ran a little way, and then fell. Appellant was "jumped" by the two aforementioned boys as he tried to enter a wooded area to the south of Idaho Street. He stabbed the Lethcoe boy and threw his knife at him, after which he retrieved the knife and returned home. Shortly thereafter, as related in the confession, an officer came to the house and took appellant "around the corner to where this happened."

Appellant offered the defense of insanity, and an expert witness testified in his behalf that he was insane at the time he committed the offense.

This testimony was rebutted by the state's witnesses, and the jury found against appellant upon this issue.

In order to fully understand the issue raised by appellant it is necessary to present a history of his case in the juvenile court:

The offense occurred on April 21, 1960. On April 27, 1960, the district attorney of Harris County filed, through his assistant, a petition in juvenile court alleging that appellant was a delinquent child, and alleging as grounds therefor an assault upon Michael Wayne Lethcoe with intent to murder, and alleging a second count of aggravated assault upon the boy. On July 20, 1960, appellant's attorney, William H. Scott, Jr., who represented him in the delinquency proceeding in juvenile court and also represented him in the criminal district court of Harris

County, filed a supplemental petition in juvenile court alleging that appellant did, on April 21, 1960, voluntarily and with malice aforethought kill Linda Faye Ruble by stabbing her with a knife. The district attorney filed a motion to strike the supplemental petition. The judge of the juvenile court heard argument and was presented with briefs on the issue and then overruled the motion to strike. Appellant then pleaded guilty, though his attorney, William H. Scott, Jr., to aggravated assault upon Michael Lethcoe and to the murder of Linda Faye Ruble. On July 21, 1960, the juvenile court found appellant to be a delinquent child, on account of the commission of the two offenses.

Appellant was then committed to the Texas Youth Council, which, in turn, placed him in the State School for Boys at Gatesville for an indeterminate period of time not to extend beyond his reaching twenty-one years of age.

On August 26, 1960, the appellant became seventeen years of age.

An indictment was returned against appellant by the Harris County grand jury on September 19, 1960, for murder, with malice aforethought, of Linda Ruble. Appellant was taken to Houston for trial. All further proceedings, including this trial and conviction, occurred, then, after appellant became seventeen years of age, the case being set for trial in Criminal District Court of Harris County on a charge of murder with malice and the trial beginning November 28, 1960, in said court and terminating in conviction on December 2, 1960, with punishment assessed at life imprisonment.

By brief and oral argument, appellant's very able counsel predicates this appeal upon five propositions, in which it is insisted that the trial court committed material and fundamental error.

We shall, first, enumerate the various propositions relied upon by appellant:

In his first proposition, appellant says that error was committed by the trial court in denying his motion to quash the indictment for want of jurisdiction, for the reason that the juvenile court alone, had jurisdiction over the person of appellant because of his previous conviction for the same offense,

under the Juvenile Delinquency Act. Appellant preserved this matter by his formal bill of exception No. 4.

Appellant next complains that the trial court erred in overruling his motion to quash the indictment by reason of the course of deliberate delay by the district attorney, which delay was calculated to deprive appellant of his rights under the Juvenile Delinquency Act. Appellant insists in his motion and the undisputed evidence adduced thereon that the district attorney deliberately delayed presenting the offense to the attenion of the grand jury, for the purpose of preventing him from exercising his rights as a juvenile under the law, and thereby deprived him of such fundamental right. This matter is preserved as formal bill of exception No. 6.

Appellant next complains that the trial court committed error in overruling his motion to quash the indictment by reason of double jeopardy, or, alternatively, former conviction, because he had previously been subjected to the exercise of the police power of the state available to it in his conviction as a juvenile delinquent —which motion and the undisputed evidence adduced thereon before the court reflected that appellant had previously been adjudged a juvenile delinquent by reason of the same offense for which he was here indicted. Appellant preserved this point by his formal bill of exception No. 5.

By his fourth proposition, appellant complains, as follows, that: (a) The trial court committed error in overruling his motion to exclude the testimony of Jimmy Hugh South relative to events witnessed by him on the day of the homicide in question, which motion and undisputed evidence adduced thereon before the court showed that this witness had previously testified against him (appellant) in the juvenile hearing concerning the same offense. This matter was preserved in appellant's formal bill of exception No. 1. (b) Error was committed in the overruling of the motion to exclude the testimony of Michael Wayne Lethcoe as to events witnessed by him on the date of the homicide, the motion and the evidence reflecting that said witness had previously testified against appellant in the juvenile hearing on the same offense. This matter was preserved in formal bill of exception No. 2. (c) The trial court committed error in overruling the motion to exclude and suppress the written statement elicited from appellant by the police officers —which statement had previously been introduced in evidence against him in the juvenile hearing as to the same offense. This

matter was preserved in formal bill of exception No. 3. These subdivisions (a), (b), and (c) constitute appellant's complaint brought forward in his fourth proposition.

Lastly, appellant complains of the action of the trial court in overruling and denying his special plea of previous conviction, which complaint is preserved in formal bill of exception No. 7; further error is claimed by reason of the trial court's refusing him permission to present such special plea to the jury, being preserved in formal bill of exception No. 8.

As we view the appellant's contentions, they are all predicated upon and arise as a result of his interpretation and construcion of Art. 2338-1, V.C.S., commonly referred to as the Juvenile Delinquency Act.

Said act must be construed in connection with Arts. 5143 (c) and 5143 (d), subsequently enacted, and with Art. 5143 (a), V.C.S.

Under Art. 2338-1, the term "delinquent child" means any female person over the age of ten and under the age of eighteen, and any male person over the age of ten and under the age of seventeen years: (a) who violates any penal law of this state of the grade of felony; (b) or who violates any penal law of this state of the grade of misdemeanor where the punishment prescribed for such offense may be by confinement in jail; (c) or who habitually violates any penal law of this state of the grade of misdemeanor where the punishment prescribed for such offense is by pecuniary fine only; (d) or who habitually violates any penal ordinance of a political subdivision of this state; (e) or who habitually violates a compulsory school attendance law of this state; (f) or who habitually so deports himself as to injure or endanger the morals or health of himself or others; (g) or who habitaully associates with vicious and immoral persons.

Sec. 21 of the Act provides that an appeal may be taken by any aggrieved party to the Court of Civil Appeals and the case may be carried to the Supreme Court by writ of error or upon certificate, as in other civil cases.

The Act was passed in 1943, by the 48th Legislature, and amended in 1959 by the 56th Legislature. It has been construed many times by the courts.

In considering the Juvenile Act we must first examine the pertinent constitutional and statutory provisions:

We find that Art. V., Sec. 8, of the Constitution of this state vests original jurisdiction in all criminal cases of the grade of felony in the district courts. Art. 54, C.C.P., vests original jurisdiction in all criminal cases of the grade of felony in the district courts and criminal district courts.

Art. 51, C.C.P., enumerates the courts that have criminal jurisdiction. The juvenile court is not listed among them.

Art. 1, Sec. 10, of our Constitution states that no person shall be held to answer for a criminal offense unless on an indictment of a grand jury, except in cases in which the punishment is by fine and imprisonment other than in the penitentiary.

Art. 1, Sec. 14, of the Constitution states that no person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.

Art. 31, V.A.P.C., provides that:

"A person for an offense committed before he arrived at the age of seventeen years shall in no case be punished with death."

The Juvenile Act did not repeal this article, but should be construed with it. Dearing v. State, 151 Tex. Cr. Rep. 6, 204 S.W. 2d 983.

The trial judge gave effect to this statute in instructing the jury as to the punishment applicable.

From a perusal of the foregoing constitutional and statutory provisions, it is obvious that the legislature did not vest in the juvenile courts of this state exclusive, continuous, uninterrupted jurisdiction over males past seventeen years of age who were indicted for felonies, although these same seventeen-year-old males previously have been adjudged by a juvenile court to be delinquent children.

It is also apparent that the juvenile courts of this state have no criminal jurisdiction.

Although elemental, it is also vividly clear that an accused cannot be tried in Texas for a criminal offense of the grade of felony except on an indictment of a grand jury.

The various courts of civil appeals, the Supreme Court, and this court have all construed the Juvenile Act many times. In every instance, these courts have all construed —without exception— juvenile proceedings to be civil and not criminal proceedings.

On account of the gravity of the questions here presented and because this is a case of first impression, we have carefully reviewed all of these cases. We shall set forth many of them below:

We think the Supreme Court correctly construed the Juvenile Act in Dendy, et al, v. Wilson, et al, 179 S.W. 2d 269, not only holding it to be constitutional but also stating that the Act does not undertake to convict and punish a child for the commission of a crime. It defines a "delinquent child," and this definition furnishes the basis for proceeding against such a child, under the Act. The only issue to be determined at the trial is whether the juvenile is a "delinquent child" within the meaning of the Act. A juvenile court is not a criminal court. The proceedings in the juvenile act are civil in nature, and the customary rules of evidence in civil cases must be followed.

In Robinson v. State, 204 S.W. 2d 981, it was held that a juvenile proceeding was a civil proceeding and that it made no difference whether the juvenile was under arrest, legal or illegal, at the time the confession was made.

Judges Graves stated in Dearing v. State, supra:

"While the appellant is confined and punished by reason of his delinquency, he is not being confined and punished for the crime of burglary. True it is that because he has committed an offense denounced as penal, that such was the reason of his delinquency having been determined and his confinement is caused by the fact of his being a delinquent child; and although in the absence of such burglarious act, his delinquency could not be established, nevertheless his confinement, and therefore punishment, is for being a delinquent and not for being a convicted burglar."

In Ex parte Walter Lewis Rheude, involving a petition for a writ of habeas corpus and appellant alleging that he was unlawfully restrained of his liberty under and by virtue of a judgment issued out of the county court of Reeves County, as a juvenile court, this court, speaking through Judge Woodley on April 11, 1956, and reported in 163 Tex. Cr. Rep. 39, 289 S.W. 2d 239, held that appellant was lawfully restrained under the terms of Art. 5143 (c) and 2338-1, V.C.S., and any question as to the validity of the statute or the judgment or commitment under which appellant was held in custody is for the civil courts, on habeas corpus.

In re Gonzalez (civil appeal), 328 S.W. 2d 475 (n.r.e.), it was stated that in a proceeding to determine delinquency "A jury trial may be had only by complying with the Texas Rules of Civil Procedure." It was further held in the Gonzalez case that evidence need not be sufficient to establish delinquency beyond a reasonable doubt, as in a criminal case, but must be of probative value to adjudicate a juvenile as a delinquent, in accordance with the Rules of Civil Procedure.

Ex parte Yelton, 298 S.W. 2d 285, held that the Court of Civil Appeals had jurisdiction of habeas corpus proceedings. Lazaros, et al, v. State (civil appeal), 228 S.W. 2d 972, held that a proceeding declaring a child to be delinquent is a civil and not a criminal proceeding.

In State v. Thomasson, 275 S.W. 2d 463 (Feb. 16, 1955), the Supreme Court held:

"The purpose is not to convict and punish but to guide and direct. By this action it is not sought to convict these children of the commission of a crime measured by Texas standards to be a felony, but no adjudge them to be delinquent in that they have committed, such an offense."

The case of Wood v. State, No. 33,278, 349 S.W. 2d 605, this court said in opinion delivered May 17, 1961:

"At the time of the indictment and trial the appellant was 17 years of age or over and was, therefore, amenable to prosecution for the crime with which he was charged. The fact that he had previously been adjudicated a juvenile delinquent and was still such at time of indictment and trial, did not deprive the district court of jurisdiction to try him

so long as at the time of said indictment and trial he was of the age of 17 years. We know of no authority to the contrary nor have we been referred to any."

In the case of Roberts v. State, 219 S.W. 2d 1016, where the same contention was advanced, the court said:

"We cannot subscribe to the doctrine that as long as this appellant was under a commitment to the State school, that is, until his twenty-first birthday, he could not be further punished for any offense committed until after he had reached such twenty-first birthday. We do know that there are numerous precedents allowing his trial upon an offense committed while in the age of juvenility, such trial occurring after he had passed such age of juvenility. See Arrendell v. State, 60 Tex. Cr. R. 350, 131 S.W. 1096; McLaren v. State, 85 Tex. Cr. R. 31, 209 S.W. 669; Dearing v. State, 204 S.W. 2d 983 * * *."

After construing the provisions of the Penal Code and of the Juvenile Act in an exhaustive analysis of these statutes, the court, in Dearing v. State, supra, concluded:

"Having reached the conclusion that the trial court had the legal right to try appellant for the offense with which he stood charged, it also had the right to take him from the State's Training School and bring him before the bar of justice to be dealt with as provided by the Penal Code of this State. Otherwise, he would be immune from prosecution until he had reached the age of twenty-one (21) years. This, in our opinion, was not the intention of the Legislature at the time they enacted the juvenile statute."

From an examination of the provisions of Arts. 2338-1 and 5143(a), V.C.S., it is noteworthy to observe that no distinction is made "in regard to delinquency, based on the kind or character of law violation, but specifically makes a delinquent child of him who is under the prescribed age and violates any" provision of said statutes defining a "delinquent child." 15 Tex. Jur., Sec. 7, p. 8, citing Davis v. State, 21 S.W. 2d 1068.

A court of competent jurisdiction means a court that has jurisdiction of the offense. 12 Tex. Jur. Sec. 224, p. 539. A juvenile court has jurisdiction over a juvenile. It is a civil court. It has no jurisdiction over felonies. The district courts and

criminal district courts have original jurisdiction in criminal cases of the grade of felony.

One of the requisite elements of "jurisdiction" is jurisdiction over the subject matter. The expression "subject matter," as used with refeernce to the problem of jurisdiction, in criminal law, refers to the offense. 16 Tex. Jur. 2d 346, Sec. 190. The term "jurisdiction," as used in the statute, "includes the three essentials necessary [sic] to the jurisdiction of a court; the court must have authority over the person and the subject matter; and it must have power to enter the particular judgment rendered." 16 Tex. Jur. 2d 357, Sec. 200.

From what we have said, it is apparent that the Juvenile Delinquency Act (Art. 2338-1) is, in its entirety, a civil statute and the proceedings thereunder including the commitment provided by Art. 5143d, V.C.S., are civil and not criminal in nature.

As noted earlier, appellant did not, personally, enter the plea of guilty before Judge J. W. Mills in the juvenile court. His attorney entered the plea of guilty for him. The judgment and commitment do not reflect that appellant was admonished concerning the consequences of the plea entered for him. He was not tried for murder, and the judge does not so recite. He was tried by the court without a jury on an allegation not contained in an indictment returned by a grand jury. While it is true that the attorney for appellant pleaded guilty to the two offenses alleged in the petition and supplemental petition in the juvenile court, the judgment of that court reflects that it found the allegations true and supported by the evidence, and, thereupon, the court found appellant to be a delinquent child. In no sense of the word did juvenile court find appellant guilty of murder and the disposition of appellant by the juvenile court was certainly not pursuant to a conviction for murder in the criminal district courts of this state.

In the case of Dunn v. State, 242 S.W. 1049, where, by agreement, appellant had been tried by a jury composed of eleven jurors for the offense of murder, the court held that " 'One tried by a jury less in number than required by law is in no jeopardy, and he may be tried again'." The opinion further states: "To say that 'he was tried before 11 jurors' states nothing constituting jeopardy."

Since all appellant's contentions revolve around the construc-

tion of the Juvenile Act, Art. 2338-1, V.C.S., we feel that it is unnecessary to separately answer each contention.

We think appellant's first contention is fully answered by the opinion of this court in Dearing v. State, supra.

Appellant's second contention may be answered by the observation that Art. 2338-1, V.C.S., does not give to a juvenile a vested right to be tried immediately following the commission of an offense. It merely provides that if he or she is proceeded against before reaching the age of 17 or 18, respectively, such proceedings shall be in the Juvenile Court. Elliott v. State, 324 S.W. 2d 218.

One answer to the contention concerning jeopardy is that the juvenile court never acquired jurisdiction over the offense for which appellant is now being prosecuted because that crime was injected into the juvenile proceedings by appellant's counsel. It has long been the rule in this state that counsel may not admit the existence of incriminating facts or agree that his client is guilty of the crime charged. Crawford v. State, 278 S.W. 2d 845, and cases there cited. This would apply to written pleadings as well as oral admissions.

Appellant's contention as to the testimony of the witness South is answered by calling attention to the fact that South actually testified in the present trial. Sec. 13 of Art. 2338-1, supra, merely prohibits the introduction into evidence of the judgment in the delinquency proceedings or a reproduction of the evidence adduced at such hearing. It was clearly not the intent of the legislature to prohibit proof by a competent witness merely because he testified to the same facts at a juvenile hearing.

Appellant's complaint concerning the introduction of his written confession, which had theretofore been introduced in the juvenile proceedings, presents no error. The confession had been introduced at the juvenile hearing by appellant's counsel, who alone charged him with the murder.

What we have said concerning the question of jeopardy disposes of the necessity of discussing the propriety of submitting the question to the jury.

We will add, however, that the provisions of Sec. 13 of Art.

2338-1, prohibiting the use of evidence adduced against the child in the juvenile court, must be construed in connection with Secs. 32 and 33 of Art. 5143 (d) dealing with the same subject. We do not construe these statutes to mean that such provision makes one who testified in a juvenile hearing incompetent to testify in a criminal trial in the district court. Sec. 13 of Art. 2338-1 not only excludes the evidence given in the juvenile court, it also excludes "the disposition of a child."

The adjudication of delinquency was made only 36 days before appellant attained his 17th birthday. It is also evident from the record that appellant committed the murder on April 21, 1960, only four months and five days prior to his 17th birthday, and became 17 years old on August 26, 1960. Peterson v. State, 235 S.W. 2d 138, refutes appellant's contention as to undue delay.

While my interpretation might make it possible for some ten-year-old murderer to be incarcerated at Gatesville as a delinquent until he attains his seventeenth birthday and then be indicted and tried and given a life sentence, the writer feels that the power to prevent such occurrence is a legislative and not a judicial function. Just as, in its wisdom, the legislature enacted Art. 31, V.A.P.C., so may it, in its wisdom, take care of such contingency that, while remote, could arise —as appellant's counsel pointed out in his exhaustive and ably prepared brief.

Appellant earnestly insists that the case of Van Hatten v. State, 260 S.W. 581, holding that the provisions of the delinquency statute are criminal in character, is here controlling.

In examining Van Hatten we find that this decision was handed down in 1924 and came under the terms of Art. 1197, C.C.P., Acts of 1911. This case cites with approval Ex parte McDowell, 172 S.W. 213, which was a 1914 decision pursuant to the terms of the same article of the Code of Criminal Procedure, 1911, as cited in the Van Hatten case.

It is evident to us that the Juvenile Act was criminal in nature at the time of the decisions in these two cases and that the article controlled juveniles and their disposition was codified in the Code of Criminal Procedure of this state.

We think that both Van Hatten and McDowell must be distinguished from the holding of this court in Ex parte Rheude,

supra, and other cases decided after Art. 2338-1, V.C.S., was enacted. In order to resolve any doubt, we here so hold.

Appellant also relies upon the cases of Watson v. State, 237 S.W. 298 (1922), and Walker v. State, 45 S.W. 2d 987 (1932), both of which cases construed the juvenile law under the old article of the criminal code prior to the enactment by the legislature of the present articles with which we are here concerned. We do not regard these cases as here controlling.

We feel that appellant's contentions are all without merit. They are all overruled. The evidence is abundantly sufficient to support the conviction.

The judgment of the trial court is in all things affirmed.

MORRISON, Judge, (concurring).

I agree to the affirmance of this conviction because it was appellant's counsel who made the charge and introduced the evidence about the murder at the juvenile hearing.